ASHLEY SHANE GAULT,         )
                           )
        Plaintiff,     )
                           )    No. 9:18-cv-03157-DCN
    vs.            )
                           )    **ORDER**
JANE VADEN THACHER,     )
VADEN OF BEAUFORT INC,   )
                           )
        Defendants.    )
_____)

The following matter is before the court on Jane Vaden Thacher ("Thacher") and Vaden of Beaufort Inc's ("the Corporation"), (together, "defendants") motion to dismiss for failure to state a claim, ECF No. 5, and motion to dismiss for lack of personal jurisdiction, ECF No. 7. For the reasons set forth below, the court grants the motion to dismiss Thacher for lack of personal jurisdiction and grants in part and denies in part the motion to dismiss for failure to state a claim.

## I.  BACKGROUND

Plaintiff Ashley Shane Gault ("Gault") brings this action against the Corporation and against Thacher, the President and majority shareholder of the Corporation. Gault argues that Thacher and the Corporation engaged in a course of self-interested dealings that depleted the Corporation's assets and therefore harmed him by decreasing the value of his 10% ownership interest in the Corporation. The Corporation is incorporated under the laws of Georgia, has its headquarters in Georgia, and has its principal place of business ("PPB") in Georgia or South Carolina. Defendants attached to their motions to dismiss the Shareholders' Agreement and Stock Purchase Agreement that Gault signed in

order to obtain his shares in the Corporation. While the Shareholders' Agreement states that the Corporation's PPB is in Savannah, Georgia, the Stock Purchase Agreement states that the Corporation's PPB is in Beaufort, South Carolina.

Both documents were signed on November 16, 2011. These documents constitute an agreement between Gault, the Corporation, and Vaden of South Carolina ("Vaden of SC"). Thacher signed each agreement on behalf of the Corporation and on behalf of Vaden of SC. Gault's complaint and his responses to the motions to dismiss treat these agreements as though they exist between Gault, the Corporation, and Thacher as an individual. However, it is clear that he actually entered into an agreement with the Corporation and Vaden of South Carolina, another corporation of which Thacher is the President. Defendants have not asked the court to pierce the corporate veil.

In 2011, Gault became a 10% shareholder in the Corporation and his ownership interest fully vested in 2016. Sometime after October 2017, Gault resigned. He now contends that Thacher and the Corporation engaged in a course of conduct that disadvantaged the Corporation, and thus diminished the amount of money that Gault received for this 10% stock ownership, while benefitting other businesses owned by members of Thacher's family ("Vaden Family Entities"). On October 19, 2018, Gault filed suit in the Beaufort County Court of Common Pleas and then filed an amended complaint on November 7, 2018. Defendants removed the action on November 21, 2018. On November 26, 2018, defendants filed their motions to dismiss. ECF Nos. 5 and 7. On December 8, 2018, Gault filed its responses to these motions. ECF Nos. 10 and 11. On December 17, defendants filed their replies. ECF Nos. 15 and 16. The court held a hearing on these matters on February 5, 2019. The motions are ripe for review.

## II.  STANDARD

When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists.  See In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997).  When the court decides a personal jurisdiction challenge without an evidentiary hearing, plaintiffs must prove a prima facie case of personal jurisdiction.  See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).  To determine whether a plaintiff has satisfied this burden, the court may consider both the defendant's and the plaintiff's "pleadings, affidavits, and other supporting documents presented to the court" and must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in its favor," and "assuming [plaintiff's] credibility." Masselli & Lane, PC v. Miller & Schuh, PA, 2000 WL 691100, at *1 (4th Cir. 2000) (table opinion); see Mylan Labs, 2 F.3d at 62; Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).  The court, however, need not "credit conclusory allegations or draw farfetched inferences."  Masselli, 2000 WL 691100, at *1 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) [] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion should not be granted unless it appears certain that the

plaintiff can prove no set of facts that would support his claim and would entitle him to relief. <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. <u>Ostrzenski v. Seigel</u>, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

### III. DISCUSSION

**A. Motions to Dismiss for Lack of Personal Jurisdiction**

Defendants filed a motion to dismiss alleging that the court does not have personal jurisdiction over Thacher in her individual capacity. ECF No. 7. Defendants concede that the court has personal jurisdiction over the Corporation. ECF No. 16 at 3. In evaluating a challenge to personal jurisdiction under a state's long-arm statute, the court engages in a two-step analysis. <u>Ellicott Mach. Corp. v. John Holland Party Ltd.</u>, 995 F.2d 474, 477 (4th Cir. 1993). First, the long-arm statute must authorize the exercise of jurisdiction under the facts presented. <u>Id.</u> Second, if the statute does authorize jurisdiction, then the court must determine if the statutory assertion of personal jurisdiction is consistent with due process. <u>Id</u> South Carolina's long-arm statute extends to the outer limits allowed by the Due Process Clause. <u>Foster v. Arletty 3 Sarl</u>, 278 F.3d 409, 414 (4th Cir. 2002). Consequently, the only question before the court is whether the

exercise of personal jurisdiction would violate due process. ESAB Grp., Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 328 (D.S.C. 1999).

The due process test for personal jurisdiction involves two components: minimum contacts and fairness. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980). Under the minimum contacts test, a nonresident defendant must have certain minimum contacts such that the suit does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 316 (1945). Due process is satisfied if the courts asserts personal jurisdiction over a defendant who "purposefully avails itself of the privilege of conducting activities within the forum state," Hanson v. Denckla, 357 U.S. 235, 253 (1958), such that it "should reasonably anticipate being haled into court there," World-Wide Volkswagen, 444 U.S. at 297. After a showing of the defendant's purposeful availment, the reasonableness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy. See id. at 292.

Personal jurisdiction over a nonresident defendant can be either specific or general. ESAB Group, Inc., 34 F. Supp. 2d at 329. Gault does not appear to claim that this court has general personal jurisdiction over Thacher; rather, the parties' arguments focus on whether the court may exercise specific personal jurisdiction over her.[1] Specific

---

[1]    At the hearing, Gault began to argue that the court had general personal jurisdiction over Thacher. When the court pointed out that these arguments were not raised in Gault's briefs, he persisted that his response to the motion to dismiss for lack of personal jurisdiction did in fact properly argue that the court had general jurisdiction over Thacher. However, upon review of his response, the court affirms that he did not present a general jurisdiction argument in regards to Thacher. Gault devotes the majority of his brief to specific personal jurisdiction and devotes six sentences to general jurisdiction.

jurisdiction arises when a cause of action is related to the defendant's activities within the forum state. See S.C. Code Ann. § 36-2-803; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King v. Rudzewicz, 471 U.S. 462, 472, 476–77 (1985)).

The first prong of the Nolan test for specific jurisdiction concerns whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 877 (2011) (quoting Hanson, 357 U.S. at 253). The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or the unilateral activity of another person or third party. Burger King, 471 U.S.

_____

Of these, five sentences lay out the law of general jurisdiction, with the final sentence contending that "[t]his court clearly has general jurisdiction over Vaden of Beaufort, even if specific jurisdiction is absent, because it has 'continually endeavored to exploit the South Carolina market' for over 10 years.'" ECF No. 11 (internal quotations omitted). In contrast to his argument that the court has general personal jurisdiction over the Corporation, which defendants concede, Gault has not made any claim regarding the court's general personal jurisdiction over Thacher individually. Gault did not offer sufficient arguments at the hearing on this motion regarding general personal jurisdiction over Thacher to supplement his brief's shortcomings on this front, leaving the court unconvinced that it has general personal jurisdiction over Thacher.

at 475. Even a single contact with the forum state can constitute purposeful availment sufficient to satisfy due process requirements. Id. at 475 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."). The Fourth Circuit has relied on several nonexclusive factors to determine whether a defendant has purposefully availed itself of a forum in the context of a business relationship, including:

> whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (citations omitted). Sporadic business activity within the forum state, including the existence of a guaranty agreement or a payment made within a state, "do not amount to purposeful availment of the privilege of conducting activities within" the forum state. Callum v. CVS Health Corp., 137 F. Supp. 3d 817, 837 (D.S.C. 2015); see also State Bank of Alleghenies v. Hudnall, 1995 WL 469446, at *2 (4th Cir. Aug. 9, 1995) ("[T]he mere execution of a guaranty does not invariably subject one to personal jurisdiction in a foreign forum.").

The second factor in the specific jurisdiction analysis—that the litigation results from alleged injuries that "arise out of or relate to" the defendants purposeful availment into the state in question—is an equally important element in the court's analysis of this case. The court must consider whether Gault has sufficiently alleged that Thacher's

wrongdoing was purposefully directed towards South Carolina, such that the court may exercise jurisdiction over her regarding these particular claims. The court finds that Gault has failed to sufficiently allege such contacts with South Carolina under both prongs.

Before turning to the amended complaint's specific allegations of Thacher's wrongdoing, the court briefly addresses what role the fiduciary shield doctrine plays in the court's analysis of personal jurisdiction over Thacher. "Under the 'fiduciary shield' doctrine, as it has generally been phrased, the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity." Columbia Briargate Co. v. First Nat. Bank in Dallas, 713 F.2d 1052, 1055–56 (4th Cir. 1983) (citing Bulova Watch Co. v. K. Hattori & Co., Ltd., 508 F.Supp. 1322, 1347 (E.D.N.Y. 1981)) (internal quotations omitted). However, the corporate shield doctrine does not prevent a court from exercising personal jurisdiction over a foreign corporate officer if that officer has otherwise exerted the sufficient minimum contacts within the forum state. See id. ("[W]hen a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state . . . he is properly subject to the jurisdiction of the forum court, provided the long-arm statute of the forum state is co-extensive with the full reach of due process."); Magic Toyota v. Southeast Toyota Distrib., 784 F.Supp. 306, 310 (D.S.C. 1992) (finding that a court "may have personal jurisdiction over an individual non-resident employee based on acts he performed on behalf of his employer under certain circumstances"). While Thacher's role as an officer of the Corporation does not alone justify the court's jurisdiction over her, the court may still exercise jurisdiction over

her if it finds that she otherwise engaged in sufficient directed activity in South Carolina in relation to Gault's allegations.

In determining whether Thacher exercised sufficient minimum contacts in South Carolina to commit the wrongdoings alleged by Gault, the court may rely on information set forth in the complaint, Thacher's affidavit attached to her motions to dismiss, Gault's affidavit attached to his response to the motion to dismiss, and the various agreements submitted by both parties.[2] Gault's main grievance is that the Corporation and Thacher diverted funds from the Corporation to the other Vaden Family Entities. He argues that Thacher and the Corporation engaged in a course of self-interested dealings that depleted the Corporation's assets and therefore harmed him by decreasing the value of this 10% ownership interest in the Corporation. He claims that "Thacher authorized the Corporation to enter into agreements by which the Corporation guaranteed debts incurred by other Vaden Entities, which was not in the best interests of the Corporation or its minority shareholder Shane." Am. Comp. ¶ 6. There is no allegation in this claim that Thacher was doing anything in South Carolina. This is a decision that would have been made at the Georgia headquarters. Thacher Affid. ¶¶ 10–13. Gault then claims that "Thacher took purposeful and calculated actions to transfer funds from the Corporation in

---

[2]     "Where, as here, there has been no evidentiary hearing and the Court proceeds upon the written submissions, plaintiffs must make only a prima facie showing that jurisdiction exists." Magic Toyota, Inc., 784 F. Supp. at 310. "In reviewing the record before it, a court may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." VDI Technologies v. Price, 781 F.Supp. 85, 87 (D.N.H.1991). "Motions to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(2) are speaking motions and it is appropriate to look beyond the pleadings to affidavits and other evidence when considering them." Ameritel Inns v. Moffat Bros. Plastering, L.C., 2007 WL 2021974, at *1 (2007 D.C. Idaho).

South Carolina to herself and other entities in which she had or has an interest." Am. Comp. ¶ 7. He refers to the "Corporation in South Carolina," but there is no separate corporation in South Carolina; it is headquartered in Georgia, where all agreements are made. Thacher Affid. ¶¶ 10–13. Gault may be referring to the physical dealership in South Carolina, but this is merely an asset of a Georgia Corporation. Gault further specifies in his affidavit that "[f]unds were transferred from the Beaufort store at Thacher's direction for the use of other Vaden Entities." Gault Affid. ¶ 30. Even presuming Gault's claims to be true, Thacher, as an individual, did not have sufficient minimum contacts with South Carolina simply because she, as an officer of the Corporation, chose to move around money made in South Carolina within the Corporation. Additionally, the Corporation is a single corporate entity, not a parent company in Georgia with a distinct subsidiary company in South Carolina; as such, the income from the Corporation's dealership in South Carolina cannot be considered to exist separately from the overall income generated by the Georgia-based Corporation.

Gault alleges that the "Corporation also pays management fees to Vaden Family Entities. It also has the opportunity to sell insurance products to its customers. Defendants allowed other Vaden Family Entities to profit from these activities, diverting potential revenue from the Corporation." Am. Comp. ¶ 20. Later, Gault reiterates that "Thacher required the Corporation to pay 'management fees' and 'support fees' to other Vaden Family Entities for salaries and benefits of administrative personnel despite the fact that the Corporation employed its own administrative personnel since it needed staff knowledgeable in South Carolina DMV, Tax, and other legal requirements." Id. ¶ 33. Specifically, Gault claims that when he began as the General Manager of the dealership,

the store was paying $10,500 a month in management fees to other Vaden Entities, and that they were paying $43,500 in fees by the time he resigned. Gault Affid. ¶ 36. Again, these allegations do not demonstrate that Thacher purposefully availed herself of the benefits of operating South Carolina in relation to this alleged wrongdoing. This is clearly a shareholder's complaint about minimized returns due to corporate mismanagement. These corporate decisions would have been made at the Georgia headquarters, and Gault has not alleged otherwise. Thacher Affid. ¶¶ 10–13.

> Gault also claims that
>
> Thacher transferred corporate opportunities, funds, and assets of the Corporation in excess of nine million dollars [ ] to other Vaden Family Entities. While those funds appear as receivable on the books of the Corporation, no promissory notes were signed, no repayment terms were required, and no interest has been charged. Thus, Defendant Thacher, as controlling shareholder and Board Member, charged [Gault] 4% interest for his loan, but no interest for $9 million in loans to the Vaden Family Entities, in which she had an interest. This has deprived the Corporation of approximately $1.5 million in interest payments from the Vaden Family Entities.

Am. Comp. ¶ 30. Here, Gault is talking about the transfer of the Corporation's opportunities and funds. The Corporation is incorporated and headquartered in Georgia. Just because it has a profitable dealership in South Carolina does not mean the Corporation's decisions—which form the basis for the alleged wrongdoing—are made in South Carolina. Those are the types of decisions made by the officers and directors at the Corporation's Georgia headquarters. Thacher Affid. ¶¶ 10–13.

Gault also takes issue with the manner in which the Corporation handled property leasing matters in South Carolina. The dealership initially leased its property from a third party. Gault claims that when an opportunity arose to purchase land and build a new location, one of the Vaden Family Entities became the landlord and raised the rent

11

significantly, all the while depriving Gault of the opportunity to participate in the decision-making process.  Am. Comp. ¶ 19.  While the building of the new property and raising of the rent took place in South Carolina, Gault has not alleged that Thacher personally had any contacts in South Carolina in regards to these actions.  Cf. Columbia Briargate Co. v. First Nat. Bank in Dallas, 713 F.2d 1052, 1063 (4th Cir. 1983) ("What is required is some showing of direct, personal involvement by the corporate officer in some decision or action which is causally related to [the tort that caused] the plaintiff's injury.").  On the contrary, Thacher has reiterated that all major decisions regarding the corporation took place at the headquarters in Georgia by Georgia residents.  Next, Gault claims that "[w]hen another tenant vacated property owned by a Vaden Family Entity and located near the dealership, the Corporation was required to pay the lease from the property rather than locating another tenant."  Id. ¶ 32.  Although this action took place in South Carolina, Gault alleges that the Corporation wrongly paid the lease, and does not allege that these actions were taken by Thacher personally.  Additionally, these sorts of decisions were made by those in the Georgia headquarters.

Gault also raises several miscellaneous claims.  First, Gault claims that "Thacher had a duty to hold regular Board and Shareholders meetings but failed to do so.  This failure prevented Shane from being informed of business practices detrimental to him."  Am. Comp. ¶ 17.  This alleged harm has nothing to do with South Carolina.  It is merely Gault's complaint as a shareholder that the officers and directors—all of whom are based Georgia, along with the Corporation's headquarters—failed to hold regular meetings.  The Corporation's shareholder meetings take place in Georgia.  Thacher Affid. ¶ 7.

None of these allegations give rise to the court's personal jurisdiction over Thacher because they either involve (1) allegations that the Corporation, not Thacher, committed the wrongdoing,[3] or (2) decisions regarding the corporation that were made at the Corporation's headquarters in Georgia by officers and directors who reside in Georgia. Thacher Affid. ¶¶ 7, 10–13. For those few allegations which actually specifically reference Thacher, none of them involve her individually directing enough activity into South Carolina to give rise to personal jurisdiction. Gault asks the court to find that Thacher had enough "direct personal involvement" in South Carolina because she was the "guiding spirit behind the wrongful conduct." Columbia Briargate, 713 F.2d at 1063. Regardless of whether Thacher was the "guiding spirit" for some of the Gault's harms, those harms stem solely from decisions made and actions taken in Georgia. The court cannot exercise personal jurisdiction over her as an individual due to "direct personal involvement" in activities that took place in Georgia.

This case resembles Sheppard v. Jacksonville Marine Supply, Inc., 877 F. Supp. 260, 267 (D.S.C. 1995), in which this court found it had personal jurisdiction over the foreign president of a foreign corporation that did business in South Carolina but declined to exercise jurisdiction over the foreign vice president of the corporation. The president, Thomas Shanty ("Shanty"), travelled multiple times a year for about ten years to the Jax Marine warehouse that his Florida-based company operated in South Carolina. Shanty and the plaintiff had conducted several meetings in South Carolina regarding the plaintiff investing in Shanty's business. The plaintiff eventually invested in the company, and the

---

[3]    Gault has not alleged an alter-ego theory or asked that the court pierce the corporate veil to be able to hold Thacher responsible for all of the Corporation's actions.

defendants' failure to return that investment after becoming insolvent was the entire basis for the suit.

By contrast, the court found that "the litigation does not directly rise as a result of [the Vice President's] involvement with the Jax Marine warehouse in South Carolina and its sales and distribution activities within the state" and that "the allegations asserted against [the Vice President] are general in nature." Sheppard, 877 F. Supp at 266. The court ultimately found that his "contacts with the forum state are not substantial enough to support jurisdiction over causes of action unrelated to those activities." Id. (emphasis added). In the same way, although the Corporation has significant contacts with South Carolina, the court finds that Gault has not alleged that Thacher herself has had substantial enough contacts with South Carolina in regards to the causes of action that Gault has levied against her. Cf. Magic Toyota, Inc. v. Se. Toyota Distributors, Inc., 784 F. Supp. at 315 ("Because plaintiffs have made numerous specific allegations against corporate officers [ ] which show some direct, personal involvement in some decision or action which is causally related to the plaintiffs' alleged injuries, the Court finds that these defendants are amenable to suit here and [ ] extends personal jurisdiction over them.").

Gault cites to Pittsburgh Terminal Corp. v. Mid Allegheny Corp., 831 F.2d 522, 527 (4th Cir. 1987) to argue that Thacher's personal contacts in South Carolina were enough to create specific jurisdiction. In Pittsburgh, the U.S. District Court for the Southern District of West Virginia had to decide whether to exercise personal jurisdiction over two corporate officers who resided in Virginia and who had been involved in the merger of a company that was to now exist in West Virginia. These directors had

solicited another company's proxy to vote its shares in favor of the proposed merger.

The court found that it had jurisdiction over the foreign officers because "[w]herever the

actual acts took place in soliciting the proxy or wherever the proxy was mailed from and

to, it could have been given effect only in West Virginia by virtue of the laws of West

Virginia under which [the company] operated." Id. At 527. The court reasoned that,

under certain circumstances, "[e]xcellent reasons exist for allowing a State to assert

jurisdiction over non-resident directors of domestic corporations" and that states have "a

strong, even compelling interest in providing a forum for redressing harm done by

corporate fiduciaries, harm endured principally by a resident of that State, the

corporation." Id. (emphasis added).

     Pittsburgh differs significantly from this case. The defendants in Pittsburgh,

while not physically travelling to West Virginia, had played an integral role in a merger

which resulted in a new corporation existing under the laws of West Virginia. Thus, their

actions were clearly directed towards West Virginia, and they had availed themselves of

the benefits of operating under West Virginia law with this newly merged corporation.

By contrast, Gault has not alleged that Thacher directed actions towards South Carolina

that had as substantial an impact on the state of South Carolina such as creating a new

corporation that operates under the laws of South Carolina. Gault claims that Thacher

came to Beaufort, South Carolina "six or seven times to view the store and to review the

profits and losses in the sales and services departments," and that he "spoke frequently

with Thacher by telephone from the Beaufort store regarding the financial operations of

Vaden of Beaufort." Gault Affid. ¶ 33, 34. A handful of visits and regular phone calls do

not provide the court with enough evidence to find that Thacher availed herself of the

opportunity of operating in South Carolina in regards specifically to Gault's claims of corporate malfeasance. The harms of which Gault complains are shareholder losses, which result from the corporate decisions made in Georgia, not from purposeful actions by Thacher individually in South Carolina. Therefore, the court grants Thacher's motion to dismiss for lack of personal jurisdiction.

### B.    Motion to Dismiss for Failure to State a Claim

Defendants also filed a motion to dismiss each cause of action for failure to state a claim, ECF No. 5. "A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 599–600 (4th Cir. 2004). "Because this matter is in federal court on diversity grounds, the choice of law rules of the forum state, South Carolina, apply." Stern v. Shelley, 781 F. Supp. 2d 281, 284 (D.S.C. 2011). "Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law." Nucor Corp. v. Bell, 482 F. Supp. 2d 714, 728 (D.S.C. 2007). Here, section 16 of the Shareholders Agreement provides that it is "a Georgia contract and shall be effected, interpreted and construed in accordance with the laws of the State of Georgia." Thus, the court applies Georgia law.

### i.    First Cause of Action: Demand for Inspection of Corporate Records

In his first cause of action, Gault asks to inspect the documents and financial records regarding any transactions described in Paragraph 8(b) of the Shareholders' Agreement so that a proper valuation can be determined. Paragraph 8(b) states that:

> The Corporation is one of several retail automotive dealerships operated by the Vaden family (the Daniels and Thachers). The parties to this agreement

> understand and agree that the Corporation is currently purchasing services and engaged in certain expense-sharing practices designed to benefit the Corporation. The parties further understand that certain insurance products sold by the Corporation may be issued and administered by one or more insurance companies owned and/or operated by the Vaden family [ ]. These arrangements will continue when deemed to be in the best interest of the corporation by the Board of Directors and the majority shareholders [ ].

Despite the court's decision to rely on Georgia law to resolve disputes under the Shareholders' Agreement, this cause of action requires the court to consider both South Carolina and Georgia statutes. Defendants contend that Gault's request for corporation documents can only be made in Georgia courts, arguing that South Carolina law "does not authorize this State to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this State." S.C. Code Ann. § 33-15-105. Under South Carolina law,

> [i]f a corporation, within a reasonable time, does not allow a shareholder to inspect and copy any other record, the shareholder who complies with Section 33-16-102(b) and (c) may apply to the circuit court in the county where the corporation's principal office (or, if none in this State, its registered office) is located for an order to permit inspection and copying of the records demanded.

S.C. Code Ann. § 33-16-104. It appears that § 33-16-104 applies to South Carolina Corporations and not foreign corporations. Id. § 33-1-400 ("'Corporation' or 'domestic corporation' means a corporation for profit, which is not a foreign corporation, incorporated pursuant or subject to the provisions of Chapters 1 through 20 of this Title."). Georgia likewise provides for shareholders of domestic corporations to apply to the superior court in the county where the corporation is registered to request an order to permit inspection of the records. O.C.G.A.§§ 14-2-1604, 14-3-140.

In response, Gault contends that the court should follow the lead of other courts that have relied upon the forum state's shareholder inspection statutes where the

corporation is authorized to do business in the state.  ECF No. 10 at 8.  The District Court

of Appeal of Florida, for instance, found that:

> Section 607.157, standing alone, applies only to Florida corporations. That
> is so because the definition of "corporation," as used in the Florida General
> Corporation Act, expressly excludes foreign corporations. § 607.004(5),
> Fla.Stat. The Act goes on to provide, however, that a foreign
> corporation, id. § 607.004(8), which has applied for authority to transact
> business in Florida "shall ... enjoy the same, but no greater, rights and
> privileges as a domestic corporation ... and, except as otherwise provided in
> this chapter, shall be subject to the same duties, restrictions, penalties, and
> liabilities now or hereafter imposed upon a domestic corporation of like
> character." Id. § 607.307. Thus, a foreign corporation authorized to do
> business in Florida is subject to Florida's statutory provisions respecting
> access to corporate books and records, and the statutory penalty is
> applicable should access be wrongfully refused.[4]

Hollander v. Rosen, 555 So. 2d 384, 385–86 (Fla. Dist. Ct. App. 1989); see, e.g.,

Jefferson Indus. Bank v. First Golden Bancorporation, 762 P.2d 768, 769 (Colo. App.

1988) ("Courts in other jurisdictions have upheld the application of forum state

shareholder inspection statutes to foreign corporations and their agents, particularly

where the corporate records sought for inspection are within the forum state or the

corporation is authorized to do business in the state.").

Although the court has not found any South Carolina case law about this, it agrees

with Gault and these other courts.  If a court may exercise jurisdiction over a corporation

because it is authorized to do business and has substantial business activities in a certain

state, then it is logical to assume that the plaintiff would be able to fully litigate their

grievances regarding the corporation before this court, including the ability to inspect the

---

[4]     South Carolina has a similar statue as Florida offering foreign corporations that
have been authorized to transact business in this state "the same, but no greater rights,
and [ ] the same, but no greater privileges, as . .. a domestic corporation of like
character."  S.C. Code § 33-31-1505.

corporation's records.  As the Supreme Court of Pennsylvania found, although "a court

will not take jurisdiction for the purpose of regulating or interfering with the internal

management or affairs of a foreign corporation . . . the granting of a right to inspect a

foreign corporation's books and records, which are within the jurisdiction, does not so

offend."  <u>Kahn v. Am. Cone & Pretzel Co.</u>, 74 A.2d 160, 161–62 (Pa. 1950).  Thus, the

court denies the motion to dismiss count 1.

### ii.  Second Cause of Action: Breach of Fiduciary Duty

Gault's second cause of action alleges that Thacher and the Corporation breached

their duty to Gault to act in the best interests of the Corporation and pursuant to the

Shareholders' Agreement.  As discussed above, Georgia law controls the court's analysis

of Gault's breach of fiduciary duty claims.  "Establishing a claim for breach of fiduciary

duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of

that duty; and (3) damage proximately caused by the breach."  <u>McConnell v. Dep't of

Labor</u>, 814 S.E.2d 790, 800 (2018), <u>cert. granted</u> (Ga. App. Nov. 15, 2018).  Defendants

argue that Gault cannot establish that the Corporation engaged in any wrongful conduct.

They further contend that Gault's breach of fiduciary duty claims are actually directed at

Thacher.  The court disagrees.  Gault devoted several paragraphs in the amended

complaint to the Corporation's wrongdoings, in addition to his allegations against the

"defendants" jointly.  <u>See</u> Am. Comp. ¶¶ 1, 20, 27, 32.

However, defendants rightly argue that "under Georgia law, a corporation does

not have a fiduciary relationship with stockholders," <u>Rigby v. Flue-Cured Tobacco Coop.

Stabilization Corp.</u>, 327 Ga. App. 29, 41 (2014).  Georgia courts have consistently

recognized that a corporation's officers, directors, and even sometimes majority

shareholders owe a fiduciary duty to its shareholders. See, e.g., Thunderbolt Harbour Phase II Condo. Assn. Inc. v. Ryan, 757 S.E.2d 189, 191 (Ga. App. 2014). However, Gault cites to only one case which purports that "[t]here is also a fiduciary relationship between the corporation and its stockholders." GLW Int'l Corp. v. Yao, 532 S.E.2d 151, 155 (Ga. App. 2000) (citing Frye v. Commonwealth Inv. Co., 107 131 S.E.2d 569, 572, aff'd, 134 S.E.2d 39 (G.A. 1963)) (emphasis added). Fyre does not stand for the general proposition that a shareholder may bring a claim for breach of fiduciary duty against a corporation. Rather, it holds first that "a corporation transfers stock at its peril and must be sure that the person to whom it issues the certificate is the true owner." Frye, 131 S.E.2d at 572 (citing Greasy Brush Coal Co. v. Hays, 166 S.W.2d 983, 984 (K.Y. 1942)). Frye also states that "a corporation owes its shareholders the duty to protect them from fraudulent transfers." Id. (quoting Pennsylvania Co. v. Franklin Fire Ins. Co., 37 A. 191, 192 (P.A. 1897)). These cited cases are about preventing the fraudulent transfer of shares and cannot be relied upon to find a general fiduciary duty by a corporate entity to its shareholders when the majority of case law on the topic finds this duty does not exist.

The law has developed since these very early cases to clarify that corporations themselves do not owe fiduciary duties its shareholders. See, e.g., Onex Food Svcs. v. Grieser, 1996 WL 103975 23 (S.D.N.Y. 1996) ("a corporation does not owe a fiduciary duty to its shareholders nor may it be held vicariously liable for breaches of fiduciary duty committed by its officers"); Johnston v. Wilbourn, 760 F. Supp. 578, 590 (S.D. Miss. 1991) ("[i]t is well established that a corporation owes no fiduciary duty to its shareholders, nor can it be held vicariously liable for the alleged breaches of its officers

and directors"); Burcham v. Unison Bancorp, 77 P.3d 130, 146–47 (Kan. 2003) (Kansas law) (finding that a corporation does not owe a fiduciary duty to shareholders).

When faced with the question of whether an LLC owed a fiduciary duty to its members, the Georgia Court of Appeals held that "[b]ased on this rationale, various foreign jurisdictions have held that a corporation owes no fiduciary duty to its shareholders . . . [a]nalogously, we hold that a limited liability company owes no fiduciary duty to its members, either directly or vicariously, for actions taken by its manager." ULQ, LLC v. Meder, 666 S.E.2d 713, 718 (Ga. App. 2008). While Meder involved an LLC, it relied upon reasoning applied to a corporation's duties:

> [i]t would be an analytical anomaly, therefore, to treat corporate directors as *agents* of the corporation when they are acting as fiduciaries of the stockholders in managing the business and affairs of the corporation. Holding the corporation vicariously liable for the directors' breach of a fiduciary duty would be flatly inconsistent with the rationale of vicarious liability since it would shift the cost of the directors' breach from the directors to the corporation and hence to the shareholders, the class harmed by the breach.

Id. (quoting Arnold v. Society for Sav. Bancorp, 678 A.2d 533, 540 (IV) (Del.1996)). The court finds this reasoning persuasive.

Additionally, the court has conducted extensive research on this issue and had not discovered another case outside of Frye in which a shareholder sued the corporation itself for breach of fiduciary duty. Those claims are always brought by shareholders against officers, directors, or majority shareholders of a corporation—sometimes as derivative suits on behalf of a corporation—but never directly against the corporation alone. Since the only officer in this suit, Thacher, has been dismissed for lack of personal jurisdiction, the court finds that Gault cannot sustain his breach of fiduciary duty claim against the Corporation alone. Thus, the court dismisses the second cause of action.

### iii. Third Cause of Action: Negligence

Gault brings a negligence claim against Thacher only, not against the Corporation. Am. Comp. ¶¶ 61–63. As Thacher has been dismissed, the court also dismisses this cause of action.

### iv. Fourth Cause of Action: Unjust Enrichment

Gault's fourth cause of action for unjust enrichment is also brought solely against Thacher and not the Corporation. Am. Comp. ¶¶ 64–67. Thus, the court dismiss this cause of action.

### v. Fifth Cause of Action: Breach of Contract

Gault next claims that defendants breached the Shareholder's Agreement by acting in the best interest of Thacher and the Vaden Family Entities at the expense of the Corporation. He also alleges that the Corporation has improperly demanded that he pay interest on the $153,255 asserted stock value of his shares as of September 30, 2010, rather than the $142,022.70 as agreed upon in the Promissory Note. Am. Comp. ¶ 74. Because the parties agreed that the Shareholders' Agreement would be construed under Georgia law, the court should analyze this breach of contract claim pursuant to Georgia law. Shareholders' Agreement ¶ 16. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Collins v. Athens Orthopedic Clinic, 815 S.E.2d 639, 645 (Ga. App. 2018), reconsideration denied (July 16, 2018).

Defendants argue that Gault has failed to allege a proper breach of contract claim regarding the Corporation's dealings with the Vaden Family Entities because, "as discussed above, the agreement explicitly authorized the activities about which [Gault]

complains with respect to other Vaden entities." ECF No. 5 at 12. However, defendants do not specify what they mean by "activities" or even which portion of the Shareholders' Agreement authorizes these activities. Defendants merely refer the court to some vague former portion of the motion by the phrase "as discussed above." The court ventures a guess that defendants refer to their arguments regarding the breach of fiduciary duty on pages 7 to 9 of their motion. However, even this text fails to properly argue exactly why the Shareholder Agreement "contemplates the very interaction between Vaden and the other Vaden Entities about which [Gault] complains." ECF No. 5 at 9. As for Gault's claims regarding the interest he owes, defendants merely allege that "[t]his claim is not properly brought as a breach of contract claim and is instead an attempt to restate his breach of fiduciary duty claim."

Defendants have not provided the court with sufficient reasons for dismissing this breach of contract claim, and as the court is not inclined to make defendants' arguments for them, it denies the motion to dismiss the fifth cause of action.

### vi. Sixth and Seventh Causes of Action: Punitive Damages and Attorney's Fees and Costs

Defendants ask the court to dismiss Gault's claims for punitive damages and attorney's fees and costs, arguing that under Georgia law, these are derivative claims and cannot succeed in the absence of an underlying substantive claim. Defendants also contend that Gault has not sufficiently pleaded either malice to support a claim for punitive damages or bad faith to support a claim for attorney's fees. First, the court refrains from dismissing these derivative claims at this stage because several underlying causes of action survive this motion to dismiss. Next, presuming the truth of Gault's

allegations of intentional corporate malfeasance, the court finds that the complaint alleges

enough malice and bad faith to survive a 12(b)(6) motion to dismiss.

### vii.    Eighth Cause of Action: Accounting

Defendants ask the court to dismiss Gault's claim for an accounting, arguing that

"an equitable claim for accounting will not lie where an adequate remedy is available at

law." Rigby v. Flue-Cured Tobacco Co-op., 755 S.E.2d 915, 923 (Ga. App. 2014); see

nVision Glob. Tech. Sols., Inc. v. Cardinal Health 5, LLC, 887 F. Supp. 2d 1240, 1276

(N.D. Ga. 2012) ("An accounting is generally unnecessary in a breach of contract action

where a party may utilize the discovery process and, where necessary, orders of the court

to enforce compliance with discovery obligations to determine the full amounts owed

under the contract."). Gault does not put forth any argument in his response to the

motion to dismiss regarding this cause of action. ECF No. 10. The breach of contract

action has survived the motion to dismiss. As such, Gault can obtain the information he

seeks through the normal discovery process for his breach of contract claim and has no

grounds upon which to bring a claim for accounting. Thus, the court dismisses the eighth

cause of action.

### viii.    Ninth Cause of Action: Unfair Trade Practices

The South Carolina Unfair Trade Practices Act ("SCUTPA") provides that

"[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct

of any trade or commerce are hereby declared unlawful." S.C. Code Ann. § 29-5-20(a)

(1985). To bring a successful SCUTPA claim, "the plaintiff must show: (1) the

defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2)

the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary

or property loss as a result of the defendant's unfair or deceptive act(s)." Wright v. Craft, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006). Gault has not demonstrated in his complaint that defendants' actions have adversely affected the public interest or will in the future. He alleges that "Defendant's conduct is capable of repetition and directly affects the public interest," but has not offered anything in support of this conclusory statement. Gault's arguments at the hearing did not persuade the court on this issue. Thus, the court dismisses this cause of action.

### ix.    Tenth Cause of Action: Conversion

Yet again, defendants' main argument in support of dismissing this cause of action is that "[f]or the reasons explained above, the conduct complained above by Plaintiff was specifically authorized by the Agreement, which he executed." ECF No. 5 at 16. Defendants also argue that Gault has not alleged any wrongful acts by the Corporation that could constitute a conversion. Id. In response, Gault merely claims that "the Agreement did not allow funds to be transferred to other Vaden Entities to the detriment of Vaden of Beaufort and [Gault]," and that "defendants are given fair notice of this claim." ECF No. 10 at 21. The court is unimpressed with the lack of arguments by both parties regarding the cause of action and is uninterested in making their arguments for them.

However, the court notes that the conversion claim only alleges that "Thacher [ ] converted to her own use and benefit property belonging to [Gault] by diverting assets to other Vaden Family Entities, thereby reducing the benefits of his ownership interest." Am Comp ¶ 89 (emphasis added). The conversion cause of action does not mention any wrongdoings by the Corporation. Although the complaint, when recapping the

allegations against defendants, states that "defendants' . . . divert[ed] retained earnings of the Corporation," id. ¶ 40, all of the allegations of fact in the amended complaint preceding this statement assert only that Thacher was diverting funds, and do not specify that the Corporation did as well, id. ¶¶ 30, 31, 33, 34, 39.  As such, the court dismisses the tenth cause of action.

### x.  Eleventh Cause of Action: Specific Performance

Gault's claim for specific performance is based on the provision in the Shareholders' Agreement stating that the value of Gault's shares will be based upon the certified financial statement of the Corporation for the last year in which he was employed.  Gault notes in his response to the motion to dismiss that defendants produced a copy of a "certified financial statement" after suit was filed, but that he still has questions regarding the work undertaken by the CPA to certify the statement which is identical to the previously uncertified report.  As such, he asks the court to order the Corporation to provide him with a certified financial statement for 2017.  Defendants argue that the Agreement does not provide that defendants will make a copy of this statement available to the Gault.  They are correct.  Section 3 of the Shareholders' Agreement states that Gault's stock value will be calculated as follows:

> The 'Stockholder's Equity' in the corporation as defined by the certified financial statement of the corporation for the year immediately preceding the triggering event shall be increased by an amount equal to 75% of the corporation's LIFO reserve as defined in that same financial statement. This total value shall be divided by the total number of shares of the corporation outstanding and that individual share value shall then be

multiplied by the number of shares owned by Gault as the retiring or selling shareholder.

Gault's resignation was a "triggering event." Section 3 provides that his stock value shall be calculated based on the financial statement but does not offer to provide a copy of this statement to Gault. For this reason, the court dismisses the eleventh cause of action.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** the motion to dismiss for lack of personal jurisdiction over Thacher, ECF No. 7, and **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss for failure to state a claim, ECF No. 5.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 15, 2018**
**Charleston, South Carolina**